Filed 11/13/23  In re Enrique R. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re ENRIQUE R., JR., et al., Persons Coming Under the Juvenile Court Law. | B325172 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 19CCJP04635E-H |
| Plaintiff and Respondent, | |
| v. | |
| MARISSA E., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Lisa A. Brackelmanns, Commissioner.  Affirmed.

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Freeman Mathis & Gary and Christian E. Foy Nagy for Plaintiff and Respondent.

_____

Appellant Marissa E. is the mother of Enrique R., Jr., Gabriel R., and Dolores R., whose father is Enrique R., Sr. (R. father), and of Annabelle S., whose father is Omar S. (S. father). Neither father is a party to this appeal. Mother appeals from the juvenile court's jurisdictional and dispositional orders as to all four children. We affirm.

## BACKGROUND

The referral prompting the current proceedings followed a July 2022 act of violence perpetrated by a man named Brandon H. against mother and the three R. children. Mother was the initial target of the attack, but Brandon turned on the children when they stepped in to protect mother. Mother and all three children sustained significant injuries in the attack.

Mother had been in a domestic relationship with Brandon for several years prior to the attack during which there were many incidents of domestic violence. Mother claimed the relationship ended in November 2021, three months *after* she obtained a restraining order against him. But documented incidents of domestic violence continued even after the relationship purportedly ended. Brandon came to mother's apartment in February 2022 to discuss reconciliation and choked her when she asked him to leave. In April 2022, Brandon and mother were in her bedroom arguing about their relationship when Brandon became violent and then attempted to hang himself.

Police responded to two calls from mother in May 2022 concerning Brandon's violations of the restraining order. But there was evidence mother also allowed Brandon to have contact with the family during that time. For example, on May 8, when Anthony texted "Hungry," mother responded "[Brandon]'s gonna

2

make some pancakes." On May 21, mother directed the children to talk to Brandon when he knocked on the door. Late on the night of May 26, Annabelle texted mother "where are you" to which mother responded, "I was dropping off [Brandon] I'll be home soon."

In June 2022, mother warned the children by group text to stay in their rooms and "please stay away from [Brandon] he's mad right now." Later that month, Brandon joined the family chat group using his Google account.

There were conflicting accounts as to how Brandon came to be at the family home on the date of his July 2022 attack on mother and the children. According to mother, Brandon arrived on his own after being released from the hospital following surgery and he was angry at mother for not visiting him in the hospital. Dolores initially corroborated this story but later recanted, explaining mother had told her not to tell the Los Angeles County Department of Children and Family Services (Department) the truth about Brandon. According to Dolores's revised account, mother had taken Brandon to the hospital for his surgery, and, while there, confronted him about texts on his phone from another woman named Crystal. Mother left when Brandon responded by grabbing her shirt and twisting it until it choked her. Nonetheless, mother, with Dolores, picked Brandon up from the hospital and brought him back to her home. There, mother took Brandon's phone and again confronted him about Crystal, prompting Brandon's attack. Brandon's account corroborated Dolores's revised account; he said mother was angry about finding texts from Crystal on his phone at the hospital, that he returned "home" to mother's house after the hospital, and that mother provoked the confrontation.

Following the attack, Brandon fled to Arizona.  He was later taken into custody and charged with attempted murder, criminal threats, burglary, corporal injury in a previous dating relationship, child endangerment, child abuse, assault by deadly force, and violation of a court order.

The Department received a referral about the family shortly after the attack.  It began an investigation and, on August 25, 2022, obtained an order authorizing removal of the children from mother.  Judge R.A. Diaz signed the removal authorization orders.  Upon removal, the children were left in the care of their respective fathers.  The Department then filed a petition alleging the four children were dependents within the meaning of Welfare and Institutions Code section 300, subdivision (b)(1) due to mother's failure to protect them from Brandon.  Among other things, the petition alleged she allowed him access to the children despite his violent propensities and despite a criminal restraining order.

The juvenile court held a combined adjudication and dispositional hearing on October 25, 2022.  At the hearing, mother testified about her history of domestic violence with Brandon as well as with the R. father and S. father.  She conceded her relationship with Brandon had put the children at risk.  But she also testified to substantial personal growth since the July 2022 attack, attained through eight domestic violence courses she had attended.  Mother said she was "working towards . . . growing as a person but also growing as a parent to be better for [her] children."

The juvenile court sustained the petition, maintained the children's removal, and ordered reunification services for mother.

Mother timely appealed.

**DISCUSSION**

Mother's appeal rests on four grounds, none of which has merit. Mother also argues that we can and must review the orders as to Annabelle despite the juvenile court terminating jurisdiction and despite the potential prematurity of her notice of appeal. The Department does not oppose a review of the orders as to Annabelle. We affirm the court's jurisdictional and dispositional orders as to all four children.

**1. Mother's Claimed Factual Error Did Not Occur**

Mother's first argument is premised on her claim that the juvenile court, despite no evidence of any domestic violence since the July 2022 attack, found domestic violence was "still ongoing." Mother's claim rests on a fallacious reading of the court's comments at the October 25, 2022 hearing.

Immediately before the purportedly erroneous finding, the juvenile court referred to the July 2022 attack as the "final incident." It then stated: "I do think *mother is working at addressing her issues* and why she keeps involving herself with relationships that involve domestic violence and taking more accountability for what she has done to continue to allow this. [¶] She sounds like she's remorseful, but I do think, based on the history of domestic violence, *that it is still ongoing* and that for those reasons, the [petition] has been proven by a preponderance of the evidence." (Italics added.)

Given that the juvenile court had just acknowledged the July 2022 attack was the "final" act of domestic violence, it makes no sense to interpret the words "that it is still ongoing" as mother does. Rather, they plainly refer to mother's "work[] at addressing her issues." Despite her testimony showing growth, she had a

5

long history of abusive relationships and was only halfway through her domestic violence classes.

That the juvenile court was referring to mother's progress as "ongoing" is all the more obvious in the context of her litigation position at the hearing. Her counsel asked to have the petition dismissed on the ground that mother's personal growth since the July 2022 attack obviated the risk of future domestic violence. The juvenile court's statement she now tries to recast as a factual error was a direct repudiation of her theory of dismissal. There was no error.

Similarly, we reject mother's collateral claim that the date and time information on the juvenile court's jurisdictional and dispositional orders shows the court predetermined them. Mother notes the orders contain in their heading "October 25, 2022 [¶] 8:30 AM," but mother testified following a lunch recess in her proceedings on October 25, 2022. A review of other minute orders in the record makes plain that the times indicated in the headers correspond to the calendar start time, not the time of issuance. The October 25, 2022 hearing was scheduled to begin at 8:30 a.m. Reference to that time in the header of the challenged orders is not evidence the juvenile court predetermined the matter. Indeed, the orders facially refer to events at the hearing that necessarily occurred after 8:30 a.m., including the court's taking of "JUDICIAL NOTICE AS STATED ON RECORD" and that mother was sworn and testified.

## 2. The Juvenile Court Did Not Fail to State the Facts Supporting Continued Removal

Mother contends the juvenile court failed to specify the facts constituting clear and convincing evidence to support continued removal in violation of Welfare and Institutions Code

6

section 361, subdivision (e) and California Rules of Court, rule 5.695(h)(1). Section 361, subdivision (e) obligates a juvenile court to "state the facts on which the decision to remove the minor is based." Rule 5.695(h)(1) is to the same effect.

The juvenile court adequately identified the facts supporting continued removal of the children from mother, as follows: "So with regard to disposition, the court is incorporating my findings and reasons in the jurisdiction portion to the disposition hearing and again is adopting the arguments of [counsel for the children and the Department] in finding that the Department has met its burden by clear and convincing evidence." Mother does not acknowledge this statement in her opening brief. In her reply, she merely asserts it was inadequate because it did not "specif[y] . . . precisely what was being referred to." We disagree. The juvenile court clearly stated all the facts it had recited in support of jurisdiction, and the arguments of counsel for the children, supported its removal order. No purpose would be served by requiring the court to repeat itself or summarize the arguments of counsel made and reported in the record only moments before the court's ruling.

As the appellant, it is mother's burden to show prejudice. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) Mother does not attempt to show a reasonable probability that the outcome would have been different if the juvenile court repeated itself or summarized counsel's arguments. She therefore offers us no basis on which to reverse for this claimed error.

### 3. The Juvenile Court's Failure to Discuss Authorities Mother Deems Relevant Is Not Error; the Proffered Authorities Are Not Controlling

Mother next argues the juvenile court erred because it "never indicated that it had considered" two recent decisions, *In re Ma.V.* (2021) 64 Cal.App.5th 11 (*Ma.V.*) and *In re Emily L.* (2021) 73 Cal.App.5th 1 (*Emily L.*). Buried in mother's argument is, for the first and only time in her opening brief, her acknowledgement that we review jurisdictional and dispositional orders for substantial evidence. (*In re L.O.* (2021) 67 Cal.App.5th 227, 238.) We reject mother's contention that *Ma.V.* and *Emily L.* compel the conclusion that substantial evidence was lacking here.

The *Ma.V.* court concluded two acts of domestic violence against the mother (and not the children), which occurred 10 months before the jurisdictional hearing and were perpetrated by a man with whom the mother had had no contact since, did not amount to substantial evidence to support jurisdiction over the children. (*Ma.V.*, *supra*, 64 Cal.App.5th at pp. 22-23.) In *Emily L.*, this court concluded a physical altercation between a mother and her minor child, which occurred 13 months before the jurisdictional hearing and since which time the family had undergone "epic changes," was not substantial evidence to support jurisdiction. (*Emily L.*, *supra*, 73 Cal.App.5th at pp. 11, 15.)

Here, the violence had occurred just three months prior to the hearing, the children had been seriously injured by mother's failure to protect them from Brandon, and mother had a long history of prioritizing her relationship with Brandon over the safety of her children. Up until the time of Brandon's incarceration, repeated acts of domestic violence which mother knew put her children at risk had not deterred her from

8

maintaining a relationship with him. Moreover, mother had a history of domestic violence with the children's fathers. The record contains sufficient evidence to conclude the risk of leaving the children in mother's care satisfied the requirements for jurisdiction and continued removal while mother continued to address the behaviors that had allowed significant physical harm to come to her children.

### 4. Mother Fails to Show the Commissioner Exceeded Her Authority in Any Way

Mother finally discusses the status of the commissioner who presided over the proceedings below. She asserts that "[o]nly judges, referees, and temporary judges may preside in juvenile dependency proceedings," and notes "[t]here does not appear to have been any order made which appointed Commissioner Brackelmanns as a referee . . . ." She further notes that, even if the commissioner were a referee, Welfare and Institutions Code section 249 and California Rules of Court, rule 5.540(b)(1) condition the effectiveness of a referee's removal order on a juvenile court signing the order within two court days, and "the record still has not indicated that any removal of the children from their mother during the stage prior to the filing of the petition or in the current case had become effective by a juvenile court judge within two court days of the order removing the children."

As to whether the presiding commissioner was duly appointed as a referee, the record is inadequate to assess mother's contention. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [inadequacy of record to evaluate contention precludes review].) Mother's observation that the commissioner was not identified in court documents as a referee

9

does not preclude her general cross-assignment as a referee pursuant to Government Code section 71622, subdivision (d). (See *In re Angelina E.* (2015) 233 Cal.App.4th 583, 588.)

As to the absence of a judge's signature on the dispositional orders, mother is again wrong on the facts. The record includes prepetition orders authorizing removal signed by Judge Diaz. Because the children had already been removed from mother, the commissioner's dispositional orders are not subject to Welfare and Institutions Code section 249's judicial countersignature condition. (*In re I.S.* (2002) 103 Cal.App.4th 1193, 1197.)

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders as to each of the children are affirmed.

GRIMES, Acting P. J.

WE CONCUR:

WILEY, J.

VIRAMONTES, J.

10